# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) Case No. 1:01CR00018 |
| | ) Case No. 1:03CR00075 |
| v. | ) |
| | ) **OPINION** |
| **KIM A. PRATER**, | ) |
| | ) By: James P. Jones |
| Defendant. | ) Chief United States District Judge |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia; Kim A. Prater, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West 2006), alleging that the attorney who represented him during his supervised release revocation hearing was mentally and professionally incompetent, which deprived him of his rights under the Sixth Amendment. Upon review of the record, I find no ground on which the defendant is entitled to relief.

I

After a three-day trial in June 2001, a jury found Kim A. Prater guilty of ten counts of filing false claims with the Internal Revenue Service. (Case No.

1:01CR00018.) Application of the then-mandatory United States Sentencing Guidelines resulted in a sentencing range of 41 to 51 months for these offenses. The government moved for a downward departure based on Prater's substantial assistance to law enforcement authorities in investigating and prosecuting others. I granted the government's motion and on June 3, 2003, sentenced Prater to 24 months of imprisonment and three years supervised release on each count, to be served concurrently.

Prater was granted the right to self-report for service of his sentence, but he absconded and did not report as ordered. As a result, he was convicted of failure to appear and sentenced to an additional four months imprisonment, to be served consecutively to his other sentence. (Case No. 1:03CR00075.) In October of 2004, I granted the government's motion for sentence reduction pursuant to Federal Rule of Criminal Procedure 35(b) in the original false claims case (Case No. 1:01CR00018) and reduced Prater's sentence in that case to 18 months of imprisonment.

Prater began serving his term of supervised release on February 14, 2005. In February of 2007, Prater's probation officer filed a petition for revocation. The Supervised Release Violation Report, filed February 22, 2008, charged Prater with the following violations: (1) on November 21, 2005, obtained property by false

pretense by writing a check to Riggs Oil Company, knowing that his account contained insufficient funds to cover the amount; (2) on March 24, 2006, obtained property by false pretense by writing a check to Davenport and Sons convenience store, knowing the account contained insufficient funds; (3) on November 30, 2006, obtained property by false pretense by writing a check to Blue Flash Oil Company, knowing he had insufficient funds; (4) on March 2, 2007, tested positive for cocaine and admitted that he used cocaine on February 27, 2007; (5) and (6) on June 1 and 15, 2007, obtained property by false pretenses by writing checks to Foster Fuels, knowing he had insufficient funds; (7), (8) and (9) on August 28 and September 11, 2007, obtained property by false pretense by writing checks to Kelso Oil Company, knowing he had insufficient funds; (10) violated the probation officer's instruction not to be involved in running a convenience store; (11) in 2007, traveled to several cities outside Virginia without permission; (12) answered untruthfully on monthly reports for June, July, August and September 2007 by indicating that he did not travel outside the district without permission; (13) answered a question untruthfully on monthly reports from March through September by listing Barbara Fuller as his supervisor at the Thompson Valley Grocery when he was, in fact, in charge of the business transactions of the store; (14) failed to report gambling losses on his monthly reports in 2007; (15) failed to send in a monthly report for October 2007; and (16) in

2007 sold six cars without a motor vehicle dealer's license. The report also showed that Prater had absconded, claiming that his life was in danger due to his cooperation with local authorities. The United States Marshals Service arrested Prater on November 14, 2007, in Iowa.

I conducted a revocation hearing on March 3, 2008. Prater, represented by a retained attorney named Wade Compton, admitted to having used cocaine, having absconded, traveling out of state without permission, failing to report gambling losses, and writing bad checks. He testified that it was a normal part of his business to pay fuel companies with checks that would be held for ten days and that his partners were responsible for the lack of funds to cover the checks. He testified that he had paid back nearly all of the money that he owed. Compton also called a state police officer to testify about Prater's cooperation with law enforcement in 2007.

I did not find Prater to be credible and I found that he had violated all of the supervision conditions as alleged in the report. I granted the government's motion to enhance Prater's sentence above the applicable guideline range, based on the fact that he had twice received and squandered downward departures. I sentenced Prater to six months of imprisonment on each of the ten counts in Case No. 1:01CR00018 and six months of imprisonment in Case No. 1:03CR00075, with all sentences to be

served consecutively, for a total term of 66 months of imprisonment, to be followed by 30 months of supervised release on each count, to be served concurrently.

Prater appealed the sentence. Compton moved to withdraw on grounds that Prater had questioned his professional competency during the revocation hearing. Prater's motion for court-appointed counsel was granted, and a new attorney was appointed for the appeal. On appeal, Prater argued that the government failed to prove that he had misrepresented any past or present fact, as required under state law to prove fraudulent intent.

The United States Court of Appeals for the Fourth Circuit affirmed, noting that upon revocation of supervised release, a "district court ultimately has broad discretion to revoke its previous sentence and impose a term of imprisonment up to the statutory maximum." *United States v. Prater*, 322 F. App'x 330, 331 (4th Cir. 2009) (citing *United States v. Crudup*, 461 F.3d 433, 438 (4th Cir. 2006)). The court found that

> [e]ven assuming that Prater is correct [in his state law arguments], the evidence in the record is more than sufficient to establish by a preponderance of the evidence that Prater made false representations at the time he received the property. . . . The district court did not err in relying on this evidence to establish that Prater violated his supervised release.
>
> Prater's sentence was also substantively reasonable. Upon revocation of his supervised release, Prater faced a possible sentence of twenty-two years' imprisonment. Prater admitted to multiple violations of the terms of his supervised release. Moreover, after receiving the

> benefit of two substantial assistance departures, Prater continued to engage in financial crimes that defrauded innocent third parties. We thus conclude the district court did not err in sentencing Prater.

*Id.*

Prater then filed this timely § 2255 motion, in which he complains that at the time of the March 3, 2008 revocation hearing, his attorney Wade Compton was mentally and professionally incompetent such that Prater was deprived of the effective assistance of counsel. In support of this claim, Prater submitted a copy of an article dated March 16, 2009, from a local newspaper concerning the suspension of Compton's law license. The article indicates that in May of 2006, an individual filed a complaint with the Virginia State Bar ("VSB"), attaching statements from three women who accused Compton of unwanted sexual advances. In March 2007, a VSB investigator began interviewing witnesses about Compton's conduct. One witness claimed Compton had raped her. By January of 2008, Compton had admitted having sexual relations with several clients. The VSB referred the allegations to the Virginia State Police, and a criminal investigation was instigated in March of 2008.

The VSB investigator's report was completed and on August 1, 2008, a VSB committee certified disciplinary charges against Compton for "engag[ing] in sexual contact with five Legal Aid clients, violating rules relating to conflict of interest, and representing a client with an impaired decision-making ability." Daniel Gilbert,

*Breach of Trust*: *Does Legal System Do Enough to Protect Clients from Their Attorneys?*, Bristol Herald Courier, Mar. 16, 2009. The committee concluded that Compton's conduct "reflect[ed] adversely on [his] honesty, trustworthiness or fitness to practice law." *Id.*

In late 2008, Compton petitioned the VSB to continue a scheduled court hearing on his disciplinary charges and requested a suspension of his license, based on a mental-health related impairment,[1] stating that he had voluntarily ceased the practice of law. The VSB opposed the continuance, and the court denied it. Ultimately, on December 10, 2008, the court approved a settlement that included a five-year suspension of Compton's law license, continued mental health counseling, and a risk assessment and mental health evaluation before any reinstatement to practice.

In his § 2255 motion, Prater alleges two general grounds for relief:

A. Counsel was unwilling to assist, emotionally unstable, and mentally incompetent to provide effective assistance of counsel during the defendant's supervised release revocation hearing; and

---

[1] According to Prater, Compton admitted that his mental illness was ongoing, starting in 2006.

B. The court failed to have the "record reflect its required and mandatory subject matter jurisdiction to entertain the original matter which in turn caused a term of probation that was allegedly revoked causing this action to be commenced."

In support of Claim A, Prater alleges that Compton's representation was deficient in the following respects:

1. Counsel was under investigation by the VSB at the time of Prater's revocation hearing and, within months, had his license suspended based on the finding that he was "unfit" to practice law;

2. Counsel failed to file a motion with the court seeking to withdraw from representing Prater for the revocation proceeding;

3. Counsel ignored Prater's request for a mental examination;

4. Counsel failed to meet with Prater or to subpoena three witnesses in preparation for the hearing;

5. Counsel failed to properly advise Prater of the maximum penalty he faced;

6. Counsel did not understand the proceeding and the applicable sentencing guidelines;

7. Counsel failed to argue that the correct guidelines be applied; and

8. Counsel failed to argue that consecutive sentences cannot be imposed for supervised release violations when the original terms of supervised release were ordered to be served concurrently.

The government has moved to dismiss Prater's § 2255 motion, and Prater has responded, making the matter ripe for consideration. Upon review of the record, I am of the opinion that the government's motion must be granted.

II

To state a claim for relief under § 2255, a defendant must prove that one of the following occurred: (1) his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) the "court was without jurisdiction to impose such sentence"; or (3) the "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A § 2255(a). The defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

It is well established that, under most circumstances, in order to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's

defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689. Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. If it is clear that the defendant has not demonstrated prejudice, the court need not inquire whether he demonstrated deficient performance. *Id.* at 697.

Proof of prejudice is not required where the defendant proves actual or functional denial of counsel. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). This exception may arise in three types of circumstances: (1) where the accused is denied the presence of counsel at a critical stage of the criminal proceedings, *id.*; (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," *id.*; or (3) where "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002). If the defendant proves any one of these circumstances, he "need not show that the proceedings were affected." *Id.* at 696 (citing *Cronic*, 466

U.S. at 659-662). In the second situation, counsel's failure to test the prosecutor's case must be complete. *Id.* Where the defendant asserts that counsel failed to challenge the prosecution's evidence or argument at specific points only, his claims fall under *Strickland* and require a showing of prejudice. *Id.* at 697-98.

Prater argues that his claims concerning Compton's representation should be decided under *Cronic*. As evidence that Compton was not capable of fulfilling the adversarial role of defense counsel on March 3, 2008, Prater offers the newspaper article indicating that shortly after his hearing, the VSB disciplinary committee found that Compton was unfit to practice law and Compton admitted to ongoing mental impairment.

In the *Bell* case, the dissent believed that counsel's mental health issues, along with his failure to present mitigating evidence or argument at a death penalty sentencing hearing, brought the defendant's ineffective assistance claims under the *Cronic* standard. 535 U.S. at 702-21(Stevens, J., dissenting.) After the defendant's sentencing hearing, counsel was diagnosed with "mental illness that rendered him unqualified to practice law, and that apparently led to his suicide." *Id.* at 702-03. The majority in *Bell*, however, found no evidence in the record demonstrating that counsel's mental health issues impaired his representation at the time of the defendant's sentencing. *Id.* at 697 n. 4. Although the defendant alleged that counsel

failed to oppose the prosecution in certain respects, he did not demonstrate that counsel completely failed to fulfill his adversarial role, and on that ground, the Court ruled that the appropriate standard for the claims in *Bell* was the two-prong test under *Strickland*. *Id.* at 698.

Prater fails to offer any evidence that Compton's mental capacity was so compromised in March of 2008 that he completely failed to challenge the prosecution's case. Prater presents no documentation concerning the nature of Compton's mental health problems, when they began, or how they affected his intellectual capabilities, if at all, in March of 2008. Prater also fails to establish that any of the misconduct considered by the VSB in its decision to bring disciplinary charges against Compton had any relationship, direct or indirect, to Compton's representation of Prater.

Moreover, the record reflects that Compton was present at Prater's revocation hearing and acted as a defense advocate. He cross-examined the government's witnesses, elicited testimony that Prater intended and attempted to pay bills that he owed, and presented testimony from a police officer concerning Prater's assistance to law enforcement. In closing, Compton argued in some detail why Prater's conduct did not support a finding that he intended to defraud anyone and that his misconduct was simply owing money that he intended to pay back. Compton pointed out that

although Violations 1, 2, 3, 5, 6, 7, 8, and 9 all alleged obtaining property by false pretenses, three of the charges pursued in state court had already been dismissed, and Prater had not been convicted on any of the charges. Therefore, Compton argued, the court should calculate Prater's guideline range based only on the violations to which he admitted. The fact that Compton did not do exactly as Prater now contends was appropriate, and the fact that I was not persuaded by Compton's arguments, do not prove that Compton completely failed to represent Prater's interests at the revocation hearing.

Based on this evidence, I cannot find that Prater's claims fall under the *Cronic* analysis. *See Bell*, 535 U.S. at 697. Furthermore, I find that Prater's allegations fail to establish ineffective assistance under the *Strickland* standard.

Much of the mitigation evidence that Prater believes Compton should have emphasized, through additional witnesses and argument, was presented at the hearing through other means. On cross examination of the government's witnesses and through Prater's own testimony, Compton elicited testimony about Prater's ongoing intention to repay all the money he owed. Before sentencing, Prater himself had an opportunity to tell the court about his assistance to law enforcement and the threats and violence his family had suffered as a result.

I believed, however, that Prater had written numerous checks, knowing that he had insufficient funds to repay the monies within the time promised, thus obtaining goods through false pretense. I also found that Prater had failed to comply with his probation officer's reasonable directive not to get involved in running a store. Accordingly, I found that Prater had committed all of the violations charged in the report, ruled that he was guilty of a Grade A violation, and revoked his supervised release.

I based my sentencing determination on the fact that even after receiving substantial assistance departures from his original sentence, Prater continued defrauding others. I found that Prater had purposely applied his intellect to fraudulent schemes and gambling instead of to promoting the success of his businesses and that the scope of his crimes, after his past downward departures, warranted a substantial sentence: 66 months.[2] On appeal, the Fourth Circuit found no error in my sentencing determinations and held that the sentence was not substantially unreasonable. Once an issue has been fully considered and decided by the court of appeals, the defendant

---

[2] As the prosecutor explained during closing arguments, this sentence fell within a range calculated by combining the number of months Prater did not serve because of the downward departures from the initial sentence, 23 to 39 months, with the guideline range on his supervised release violations, 30 to 37 months, to make a total range of 57 to 76 months. In turn, this range fell well below the 22-year statutory maximum that I could have imposed in revoking Prater's supervised release.

cannot relitigate the issue before this court under § 2255.  *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

Of course it is possible, as in all litigation, that Compton could have handled things differently.  Because Prater does not demonstrate, however, that counsel's omissions resulted in prejudice as defined under *Strickland*, I need not determine whether Compton's actions constituted deficient performance.  466 U.S. at 697.

Prater has presented no facts in this § 2255 motion, concerning his conduct or his own mental state at the time of the hearing, that alters my opinion that the sentence imposed was appropriate under the guidelines and the facts of the case.  Likewise, he has presented no legal argument that Compton failed to make on which I would have changed my opinion.  Therefore, Prater fails to demonstrate that but for counsel's alleged deficiencies, the outcome would have been different, and accordingly, his ineffective assistance claims fail under *Strickland*.  *Id.*

Finally, Prater's second claim, alleging lack of jurisdiction, also has no merit.  The respondent characterizes this claim as "incomprehensible."  Liberally construing Prater's submissions, I read his claim as asserting that 18 U.S.C.A. § 3231 (West 2000), which grants federal district courts subject matter jurisdiction over violations of federal law, is unconstitutional because Public Law 80-772 was not properly enacted into law by Congress.  It follows that if the court had no jurisdiction to

convict Prater of the original charges, it had no jurisdiction to revoke his supervised release.

Prater's claim has been soundly rejected, based on historical facts, and Prater presents no legitimate case law to the contrary. *See*, *e.g.*, *United States v. Risquet*, 426 F. Supp. 2d 310, 311 (E.D. Pa. 2006) (finding that Public Law 80-772 passed both houses of Congress and was signed into law by President Truman on June 25, 1948). Accordingly, I must deny relief on this claim.

### III

For these reasons, I find no ground upon which the defendant is entitled to relief under § 2255 and his motion will be denied.

A separate Final Order will be entered herewith.

    DATED: May 7, 2010

    /s/ JAMES P. JONES
    Chief United States District Judge